

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ANDRE DESHAWN COOLEY

*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

**v.**

WESTERN MICHIGAN UNIVERSITY COOLEY LAW
SCHOOL, AND CHRISTOPHER HASTINGS, AND
NELSON MILLER,AND PAUL ZELENSKI,AND Don
LeDuc, AND STATE OF MICHIGAN, AND
GOVERNOR RICKY SNYDER who is sued in his official
capacity, AND Dr. Agustin V. Arbulu, Executive Director
of the Michigan Department of Civil Rights who is sued in
his official capacity, AND Kent County, Michigan Board o

*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Case:4:16-cv-13727
Judge: Berg, Terrence G.
MJ: Stafford, Elizabeth A.
Filed: 10-19-2016 At 02 16 PM
CMP COOLEY v. WESTERN MICHIGAN UNIV
ERSITY ET AL. (SO)

Jury Trial: ☑ Yes ☐ No
*(check one)*

## Complaint for a Civil Case

MIED ProSe 1 (Rev 5/16)  Complaint for a Civil Case

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | ANDRE COOLEY |
| Street Address | PO BOX 2811 |
| City and County | GRAND RAPIDS, KENT |
| State and Zip Code | Michigan, 49501 |
| Telephone Number | 601-319-5840 |
| E-mail Address | |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Western Michigan University Cooley Law School |
| Job or Title (if known) | |
| Street Address | 300 South Capitol Ave |
| City and County | Lansing, Ingham |
| State and Zip Code | Michigan, 48933 |
| Telephone Number | (517) 371-5140 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | Christopher Hastings |
| Job or Title (if known) | Law Professor |
| Street Address | 111 Commerce Ave SW |
| City and County | Grand Rapids, Kent |
| State and Zip Code | Michigan 49503 |
| Telephone Number | (616) 301-6800 |
| E-mail Address (if known) | |

2

Defendant No. 3

| | |
|---|---|
| Name | Don LeDuc |
| Job or Title (if known) | President and Dean |
| Street Address | 300 S. Capitol Ave |
| City and County | Lansing, Ingham |
| State and Zip Code | Michigan, 48933 |
| Telephone Number | (517) 371-5140 |
| E-mail Address (if known) | |

Defendant No. 4

| | |
|---|---|
| Name | Paul Zelenski |
| Job or Title (if known) | |
| Street Address | 300 S. Capitol Ave |
| City and County | Lansing, Ingham |
| State and Zip Code | Michigan, 48933 |
| Telephone Number | (517) 371-5140 |
| E-mail Address (if known) | |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

3

MIED ProSe 1 (Rev 5/16)  Complaint for a Civil Case

**A.**   **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 CFR Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services and Disability Discrimination, Education Discrimination

**B.**   **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.   The Plaintiff(s)

    a.   If the plaintiff is an individual
The plaintiff, *(name)* Andre Cooley_____,
is a citizen of the State of *(name)* Mississippi_____.

    b.   If the plaintiff is a corporation
The plaintiff, *(name)* _____,
is incorporated under the laws of the State of *(name)*
_____, and has its principal place of business in the
State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

    a.   If the defendant is an individual
The defendant, *(name)* WMU COOLEY LAW____, is a citizen of the
State of *(name)* Michigan_____. *Or* is a citizen of *(foreign nation)* _____.

    b.   If the defendant is a corporation
The defendant, *(name)* _____, is incorporated
under the laws of the State of *(name)* _____, and
has its principal place of business in the State of *(name)*
_____. *Or* is incorporated under the laws of
*(foreign nation)* _____, and has its principal place
of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

4

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

Amount is in excess of the stauttory requirement,

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

STATEMENT OF ALLEGATIONS ATTACHED

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do
not make legal arguments. Include any basis for claiming that the wrongs alleged are
continuing at the present time. Include the amounts of any actual damages claimed for the acts
alleged and the basis for these amounts. Include any punitive or exemplary damages claimed,
the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Wherefore, Plaintiff respectfully prays for  injunctive relief in an order requiring DEFENDANT
WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL correct the examination
grade to to reflect the proper grade Plaintiff would  receive under the professor's holistic
grading policy in consideration for the answers  provided in the blue book; Judgement as a
matter of law, actual damages,  punitive damages AGAINST DEFENDANT STATE OF
MICHIGAN, GOVERNOR RICK SNYDER who is sued in his official capacity,  AND  Dr.
Agustin V. Arbulu, Executive Director of the Michigan Department of Civil Rights (MDCR),
who is sued in his official capacity, AND Kent County, Michigan Board of Commissioners,
Daryl J. Delabbio County Administrator/Controller and Donald Johnston, AND DEFENDANT
WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL as determined to be
reasonable per the Court's discretion, and any and all other relief this honorable court deems
just, necessary and proper.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an
improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of
litigation; (2) is supported by existing law or by a nonfrivolous argument for extending,
modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if
specifically so identified, will likely have evidentiary support after a reasonable opportunity for
further investigation or discovery; and (4) the complaint otherwise complies with the
requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-
related papers may be served. I understand that my failure to keep a current address on
file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10 | 17 | 16        , 20_____.

Signature of Plaintiff _____

Printed Name of Plaintiff _____

MIED ProSe 1 (Rev 5/16)  Complaint for a Civil Case

**Additional Information:**

DEFENDANT 5:

NELSON MILLER,
Assistant Dean
111 Commerce Ave SW
Grand Rapids, Kent
Michigan 49503
(616) 301-6800

Defendant 6, 7 and 8:
Governor Snyder and Dr. Agustin V. Arbulu,
Executive Director of the Michigan Department of Civil Rights (MDCR), The Michigan Department of
Civil Rights
Office of the Governor
111 S. Capitol Avenue
George W. Romney Building
Lansing, Michigan 48933.

Defendant 9, 10 and 11
Kent County, Michigan Board of Commissioners, Kent County Michigan,  Daryl J. Delabbio County
Administrator/Controller
County Administration Building, and Judge Donald Johnston
300 Monroe Avenue NW
Grand Rapids MI 49503

7

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

County in which action arose: _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ANDRE DESHAWN COOLEY

### DEFENDANTS
WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL, CHRISTOPHER HASTINGS, NELSON MILLER, PAUL ZELENSKI, Don LeDuc, STATE OF MICHIGAN, GOVERNOR RICKY SNYDER who is sued in his official

**(b)** County of Residence of First Listed Plaintiff   Kent
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ingham
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
James Robb
300 S. Capitol Avenue
Lansing, MI 48933

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities Employment
- ☒ 446 Amer. w/Disabilities Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729 (a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  10/17/16

SIGNATURE OF ATTORNEY OF RECORD   *Ander Cooley, Plaintiff*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　　Other than stated above, are there any pending or previously
　　　　　discontinued or dismissed companion cases in this or any other
　　　　　court, including state court? (Companion cases are matters in which
　　　　　it appears substantially similar evidence will be offered or the same
　　　　　or related parties are present and the cases arise out of the same
　　　　　transaction or occurrence.)　　　　　　　　　　☒ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☐ No

If yes, give the following information:

Court: Kent County Circuit Court

Case No.: 16-08745-AA

Judge: Donald Johnston

Notes : Appeal of administrative decision of the Michigan Department of Civil Rights

ANDRE COOLEY, Plaintiff

v

WESTERN MICHIGAN UNIVERSITY

 COOLEY LAW SCHOOL,

STATE OF MICHIGAN,

GOVERNOR RICK SNYDER who is sued in his official capacity,  AND  Dr. Agustin V.

Arbulu, Executive Director of the Michigan Department of Civil Rights (MDCR) who is sued in

his official capacity, Kent County, Michigan Board of Commissioners, Daryl J. Delabbio County

Administrator/Controller and Donald Johnston, DEFENDANTS

## STATEMENT OF FACT

1.  Plaintiff is a student at Western Michigan University Thomas M. Cooley Law School, Grand

    Rapids, MI  (WMU-TMCLS or WMU-COOLEY)  pursuing a Juris Doctor Degree.

2.  Plaintiff aged out of foster care at age 21 and  has lived independently since.

3.  Plaintiff is a person protected under the Americans with Disabilities Act (ADA) and

    Michigan Persons With Disabilities Civil Rights Act (PWDCRA) against Appellee.

4.  Plaintiff is a member of the class of persons protected by the statute, and the type of harm

    suffered is the type of harm that the statute was enacted to protect against.

5. Plaintiff has a disability which limits a major life activity as defined by the Americans with Disabilities Act (ADA) and Michigan Persons With Disabilities Civil Rights Act (PWDCRA).

6. Plaintiff was approved for and is receiving accommodated testing at Defendant's Institution.

7. Plaintiff asserts that Plaintiff's rights under the ADA have been violated based upon conduct of the Defendant in testing procedures and exam grading.

8. Defendant Christopher Hastings failed to grade or caused a failure in graded of the Section 213, Contracts II Exam, Hilary Term 2015 correctly and award proper points to Plaintiff;

9. Thereby causing disparate impact harm to the Plaintiff.

10. As result Plaintiff has received disparagement and Plaintiff's grades have been adversely impacted.

11. Defendant -University has a policy and procedure, where students who are covered under the ADA have the option of accommodated testing.

12. Students who have identified disabilities may test separately pursuant the Americans with Disabilities Act (ADA) as a result of recommendations made by a committee to consider the evaluation of licensed professionals who compile statistical, biographical, and educational history to ascertain the type and extent of the patient's disability.

13. Students who are tested at Defendant University and receive accommodations are tested, and the examinations are placed inside of manilla or yellow-toned folder to be delivered to professors.

14. The yellow-toned folder is the only thing different about the individual test.

15. Plaintiff's Examinations are placed in yellow toned folders to be delivered to professors.

16. Plaintiff's Section 213, Contracts II Exam, Hilary Term 2015 was placed in a yellow toned folder.

17. After the examinations are taken, students who have had their exams accommodated are placed on the top of the stack of exams for the other students who have not received accommodations.

18. It is the policy of Western Michigan University Thomas M. Cooley Law School to provide reasonable accommodations in conformity with state and federal law for students who are qualified to pursue a law degree and who show disability and request accommodations.

19. The school has a policy for grade appeals,

20. The plaintiff did file or cause to be filed an appeal to the Section 213, Contracts II Exam, Hilary Term 2015.

21. Professor Hastings is a Professor of Law and has been licensed to practice law in Michigan since November 24, 1987.

22. Hastings provides consultation to other attorneys only for consultation and expert services in the areas of legal professional standards, the unauthorized practice of law, and procedural matters.

23. Christopher Hastings practices in  Bank Workouts, Business Law, Class Actions, Commercial Law, Contracts, Legal Malpractice and Professional Liability.

24. Defendant Nelson Miller has been licensed to practice law in the state of Michigan since November 20, 1987.

25. Defendant Christopher Hastings and Nelson Miller are friends and both attended University of Michigan Law School.

26. On June 30, 2015 I requested a scoring rubric from Dean Nelson Miller for Professor Hastings's Contracts II, Section 213, Hilary Term 2015.

27. On July 1, 2015 Joan Rosema-David, Test Administrator sent me the following: "You may go to Professor Hastings directly, and ask for any information you need.  Appeals are completed, so there is no need for any anonymity any longer."

28. On July 2, 2015 I sent Professor Hastings the following message: "Is it possible for me to get a copy of your scoring rubric for your Contracts II Section 213, as well as Civil Procedure I Section 105/17 for Hilary Term 2015? If so when may I come by and pick them up? If email is more convenient, that will be fine as well. Thank you;"

29. Hastings response: "I do not have such a rubric, Andre, and I honestly don't know how some of my colleagues use or apply them. I am happy to go over your exams with you though, and show you where you missed points."

30. On July 6, 2015 I met with Professor Hastings concerning the points that I was counted off for on his Section 213, Contracts II Exam, Hilary Term 2015 as well as the Civil Procedure examination Section 17, Hilary 2015.

31. On July 6, 2015 I met with Dean Nelson Miller and in my conversation with Dean Miller I revealed that professor Hastings had admitted to me that he had been unfair to me in grading my exam and had missed fact and law issues that I had raised in my blue book.

32. I did not tell Dean Miller that I recorded my conversation with Professor Hastings.

33. Dean Miller advised me that he would "take counsel" on the issue and he would get back with me on the issue.

34. On July 20, 2015 I spoke with Dean Nelson Miller and I asked him what he figured out concerning my informal complaint and disabilities rights issue. Dean Miller told me that he met with Professor Hastings and Professor Tarrien, and what he took from the meeting is that I should probably get involved in some professional development activities outside of school. In my conversation with Dean Miller I revealed that professor Hastings had admitted to me

that he had been unfair to me in grading my exam and had missed fact and law issues that I
had raised in my blue book;

35. I then provided Dean Miller with a written statement of fact and informal complaint that I

believed my rights may have been violated. I then revealed to Dean Miller that I recorded my

conversation with Professor Hastings and I informed Miller that I was attaching a written

transcript of the conversation with Professor Hastings to the complaint.

36. Dean Miller emailed me on July 20, 2015 the following: "Good evening, Andre'. I did send

your materials to Associate Dean of Enrollment and Student Services Paul Zelenski who

reviewed them and asked that you get in touch with him. He will help you through the

informal process described in the Student Policy Manual appendix on disability rights.

Please review those procedures and contact Dean Zelenski."

37. On July 21, 2015 I send Dean Zelenski the following: "Dear Mr. Zelenski, Dean Miller

advised me to contact you regarding a personal matter. At your earliest, can you please

contact me (601) 319-5840 so that we can discuss the matter?"

38. On July 21, 2015 Paul Zelenski emailed me the following: "Hi Andre' - I would be happy to

speak with you. It would probably be best if you contact my office directly at extension 2843

to schedule a phone meeting. This way we will both have the time to discuss your personal

matter. Ms. Brown in my office will be happen to schedule you in the next couple of days."

39. On July 23, 2015 I spoke on the phone with Dean Zelenski. Dean Zelenski discouraged me from filing a complaint, and stated that he would give my issue full consideration and further that I should amend my complaint and explain to him what the issue is concerning my disability. Dean Zelenski had received my complaint from Dean Miller, but Dean Zelenski insisted that he receive the complaint letter from me. Dean Zelenski further advised me that I should take a few days and think about the real issue here.  He went on to state that I shouldn't be spending so much time on this complaint process, further stating that "It wouldn't make a big difference,"  and even encouraged me to drop the issue. I explained to Dean Zelenski that I would be sending him my complaint.

40. On the first line of my complaint I identified as an individual protected under the ADA, and I fell that asking me for an amendment to the complaint was Dean Zelenski's way of trying to keep me busy with the school work load that I already have. On July 23, 2015 I sent my complaint (amended) to Dean Paul Zelenski with the following message: Dean Zelenski, Attached please find my amended complaint per your request and our phone conversation earlier today. There is a page intentionally left blank before the transcript begins. If you have any other questions for me, please don't hesitate to contact me at the number below.  Thank you for your time and attention with this matter."

41. On July 28, 2015 I received the following email from Paul Zelenski: "Hi Andre' - I am in receipt of your document and will review it ASAP."

42. On July 29, 2015 I received the following email from Paul Zelenski: "Hi Andre' - it was a pleasure to speak with you the other day and I am in receipt of your complaint regarding the grading of your Contracts II and your Civil Procedure I exams. I appreciate your willingness to try to handle this situation informally per the School's complaint procedures." I have read your statement thoroughly and frankly see no relation between the grading of the two exams and a documented disability. In other words, your matter should strictly be handled through the grade appeals process which I believe you have exhausted. I encourage you to think about moving forward and focusing on the exams before you. I am more than willing to discuss this matter further with you if you would deem it productive. Sincerely, Dean Zelenski cc: student file."

43. On July 30, 2015 I emailed Dean Zelenski the following: "In my phone conversation with you I was asked to amend my complaint, which I returned to you the same day. I did not hear from you until this past Tuesday, which was more than a week later. In your email you advised me that you had received my amended complaint. I cannot state enough the countless hours that have gone into this process. I attached a transcript of my conversation with Hastings where he admitted he didn't grade my exam properly. I am asking that you

reconsider your decision and accept this letter as amendment to my informal complaint. At this time, the informal complaint as amended will serve as my formal complaint to WMU-Cooley Law School. The recorded admissions by Hastings support the facts that I have presented to you for consideration. I would like complete fair review of my complaint and allegations. Sincerely,  /s/ Andre D. Cooley"

44. On July 30, 2015 I received an "out of the office" response from Zelenski's email address. On July 30, 2015 I sent Dean of Students Amy Timmer the following: " Dear Dean Timmer, I filed an informal complaint concerning grade issues with WMU Cooley. Please note my attached letter to Dean Zelenski it also contains a transcript attached. He is out of the office until August 10, 2015, but I feel that I am getting nowhere with him as the issues mentioned in my complaint have not been addressed or resolved and this process has been ongoing for more than 6 weeks. Please accept all of the following as my formal complaint. Thank you so much for your time, attention, and consideration. Sincerely, Andre' D. Cooley."

45. On July 30, 2015 I received an email from Dean Timmer that read: "Hi Andre', I'm sorry that disability issues fall within Dean Zelenski's area of responsibility and not in mine.It appears you filed the complaint on July 23, met with him sometime before July 29, and asked him for reconsideration today.  I think you should allow the process to work by giving him time to review your request for reconsideration when he returns to the office.  It seems you are

getting prompt attention from him (though perhaps not the answer you hoped to receive), so please be patient and give him a chance to respond. My best, Dean Timmer."

46. On or about July 6, 2015, Plaintiff had exhausted the appeals process by filing two necessary appeals for reconsideration of the work submitted, both appeals were denied by professor Hastings.

47. Professor Hastings speaks English and communicates in English.

48. Professor Hastings Reads in English.

49. Plaintiff met with Defendant Professor concerning the points that Plaintiff was counted off for on his Section 213, Contracts II Exam, Hilary Term 2015, and Plaintiff recorded their conversation.

50. The defendant is in actual or constructive possession of the recording made by the Plaintiff.

51. Plaintiff recorded a conversation the plaintiff had with Professor Christopher Hastings when Hastings told the plaintiff directly that Hastings overlooked several points of law analysis that "may not have been so clear" to Defendant .

52. The law analyses in the Section 213, Contracts II Exam, Hilary Term 2015 are in a readable format that can be clearly read on the original exam as well as the two appeals that were filed.

53. Plaintiff filed a complaint with the Michigan Department of Civil Rights on or about

54. In the conversation that was recorded by Plaintiff appellee-Professor even went on to state that Plaintiff mentioned points of law that other students had not.

55. Appellee-professor Hastings told the plaintiff that the professor made errors because Plaintiff's essays were "too wordy".

56. Professor Hastings told the investigator with the Michigan Department of Civil Rights that Hastings never told plaintiff that plaintiff was too wordy.

57. Plaintiff filed a substantive exam appeal as required under Section D 1.04. of the student policy manual, Grounds for Appeal. Which authorizes students to appeal a grade that has not been voided and can be appealed on the ground that a numerical or administrative error occurred, or that a clear substantive mistake was made.

58. The appeal took eight hours for Plaintiff to prepare and took away from study time, thereby adversely impacted Plaintiff's performance during that week and subsequent weeks of class. Plaintiff has spent numerous hours working to preserve Plaintiff's rights and make every attempt possible for Defendant To respond to and remedy the harm suffered by Plaintiff.

59. Defendant explained to Plaintiff in the recorded conversation that Defendant reads every exam twice in what Defendant termed to be the Defendant's "holistic grading" approach.

60. This holistic policy is how Defendant Grades each student. If this is true the points of law that are in the original Section 213, Contracts II Exam, Hilary Term 2015 blue book should not have been missed.

61. In practice if Defendant reads every exam twice in what he termed to be his "holistic grading" approach which awards points to students who "fall off," the Civil Procedure examination Section 17, Hilary 2015 should have been graded properly.

62. Even if Defendant didn't read the exams twice, on appeal the issues plaintiff raised concerning the mistakes in grading should have been remedied by the appeals process.

63. Plaintiff filed an appeal on the Civil Procedure examination Section 17, Hilary 2015, on or about June 8, 2015.

64. Plaintiff missed points where Defendant was unclear and asked a question of venue, where Defendant admitted he neglected to alter the call of the question, which was a violation of Cooley Policy Manual v.46 06/03/2015, Updated Trinity Term 2015.

65. During week 14 of Hilary Term 2015 Defendant told students in class that because we were tested on Personal Jurisdiction in the interim assessment that we would not be tested heavily on Personal Jurisdiction, and the unedited question was worth 10 points.

66. In the Conversation that the Plaintiff recorded with Christopher Hastings, In starting with the Contracts II Exam, Defendant Explained to Plaintiff at 1:35 that Defendant Has a holistic grading procedure, which helps students who make mistakes;

67. The Defendant Asserted what Defendant Was looking for as an answer, and how Defendant Tried to score the examination.

68. In the Conversation that the Plaintiff recorded with Christopher Hastings at 3:07 The appellee-professor explained that Plaintiffs answer was problematic and that it took Plaintiff a lot of time to write because Plaintiff started out with a bunch of law.

69. The Defendant Went on to explain that Defendant Gave 11 points to students who sustained an argument that the facts were, distinction drawn between the "rock and the cow case."

70. In the Conversation that the Plaintiff recorded with Christopher Hastings, at 4:07 The Defendant Explained that Plaintiff talked about conscious ignorance, which is an element of the question on application of law to the facts, and at 4:19 the Plaintiff said that the answer Defendant Gave was consistent with other students who received an "A" the professor then said "THE ONLY THING THAT IS PROBLEMATIC IS IT TOOK YOU A LONG TIME TO WRITE IT." Law was applied to fact in this question, therefore no penalization should have been given for Plaintiff being wordy, law students are taught to explain the answer.

71. The Defendant Explained that Plaintiff had his "finger right on it", In the Conversation that the Plaintiff recorded with Christopher Hastings, The Defendant further explaining that conscious ignorance is the heart of the cow and egg case

72. The professor then explained that Plaintiff's answer is much shorter than Plaintiff, but the professor explains that Plaintiff did get to the answer, but asserted that it took Plaintiff a long time to write.

73. In the Conversation that the Plaintiff recorded with Christopher Hastings, At 7:00 The professor explained that it took Defendant Four whole pages to get to there [the answer] and further explained that Plaintiff would have more time if Plaintiff started somewhere else on analysis, suggesting further that Plaintiff's exam was too wordy.

74. In the Conversation that the Plaintiff recorded with Christopher Hastings, The professor at 5:26 explained to Plaintiff that he wanted students to get that most people did not draw a distinction as to the value, whereas Plaintiff's answer is this exactly in the blue book on page 4 in the first paragraph starting at line 1, so, if the appellee's assertion is correct, Plaintiff should have been assessed full point value for this question, a total of 15 points.

75. In the Conversation that the Plaintiff recorded with Christopher Hastings, where Plaintiff's answer included what the question asked Defendant should be entitled to full credit point value under the appellee's policy of holistic grading, the professor went on to explain in more

detail, somewhat changing his position to saying that the ultimate surprise was that it was not about the value of the egg, but that the egg was not a fossil at all. On Page 4 of the BlueBook Paragraph, Plaintiff explained that the parties were consciously ignorant of the goods, or the lack there may have been in the safe, Plaintiff's answer further explained that people are allowed to make bad deals under the law where there is no bad-faith. This answer is consistent with an award of 15 Points. The professor changed his position and made it about an unrelated issue, whether the item was an egg or not does not change the answer because the item was bought at an auction.

76. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The Defendant Said at 6:27 seconds that Plaintiff missed points because Plaintiff did not say "This case is more like the rock or cow case," The fact that the Plaintiff did not reference the Cow or Rock case is immaterial, law was applied to fact, therefore full point value should have been given.

77. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, Here at 7:31 The Plaintiff explained to the Defendant That because the driveway was not down, that Plaintiff made an analogy and applied the standard for sale of goods- considering a driveway was laid, but was not the type or kind specified in the service contract, and would have to be

replaced with a new snow melt system, which would require going to a home improvement store and buying that thing, and getting a service contract and having the things installed.

78. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor pointed out that he remembered the Plaintiff's exam and further explained that to distinguish between a sale of good and services the thing to ask yourself is "can n I go to the store and buy this"

79. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The Defendant Went on to assert that and suggest that because the item in question had to be installed it couldn't be a goods and services, and Defendant Said at 8:12 "you said it right here install, it's not goods," then laughs.

80. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor points out that one would have to call up someone for that type of service, whereas Plaintiff is still of the position that goods that are sold can be installed and because Plaintiff can go to a hardware store and purchase a driveway or a fence and have that item erected, the thing being sold is in fact a sale of goods, whereas the service contract for installing is a separate but related issue. Here, law was applied to fact, therefore full point value should have been given in the amount of 15 points.

81. In the Conversation that the Plaintiff recorded with Christopher Hastings, Here, at 8:42the professor asserted that the Plaintiff assumed what the professor was looking for, further asserting that Plaintiff began "half way in the middle and assuming it was a UCC case," without applying the test to see whether it is or is not, the professor further explained that if he can see Plaintiff doing that, even if Plaintiff is wrong "that is good because I know you have applied the UCC test, the Defendant Could assess point value for the answer, stating "but you lost some point from starting in the wrong place." Whereas Plaintiff applied the UCC and Common Law and gave proper explanation of the facts on each point of law.

82. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, At 12:00 the professor suggest that the Plaintiff's answer sounds much like the answer of "someone who just took a walk through the whole course and did not spot the issue," whereas the Plaintiff had in fact analyzed the Perfect Tender Rule and the UCC, and Common Law.

83. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, At 12:17 the professor said that Plaintiff "started out pretty good but explained that Plaintiff was in the wrong piece of law, the professor then stated that [Plaintiff] was saying (in the meeting ) that we were totally about breach or performance but if Plaintiff was in the UCC would have been the Perfect Tender Rule. The professor went on to state that "those words

don't appear here, so the professor explained that he was looking for "has there been substantial performance and how to measure damages" the professor then stops and references his model answer, suggesting that Plaintiff went straight to the "UCC which was wrong,"

84. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explained that Plaintiff was projecting the Perfect Tender Rule and going into substantial performance, but that the issue is has there been substantial performance, and how to measure damages, whereas Plaintiff provided full explanation of all law and theory in the BlueBook and applied three different reasons why Plaintiff reached each conclusion.

85. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, at 13:00 The professor asserted that if he was grading from a grid (answer key) that Plaintiff would have "fallen off" whereas the professor has a policy of grading holistically, explaining that if the Defendant Had an answer key would have been more beneficial to the Plaintiff, and this example is where the Defendant Again runs from the fact that Defendant Made mistakes.

86. at 13:29 is where Plaintiff explained that he applied the test,

87. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, at 13:45 The professor then asserted reading from the test, " Well, it's tender... Revocation.... Rejection.... Cure.... the professor further asserted that's not the perfect tender rule. The

professor further explained that the Perfect Tender Rule is a part of Acceptance and that you

would have the right to reject. Plaintiff had this answer exactly in the Plaintiff's blue book on

page 11.

88. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, 13:56

Professor further explained that the Perfect Tender Rule is in the "A" and that writing TAR-C

doesn't do that.  Whereas The professor has read the answer out loud, and concluded

otherwise,  but refuses to acknowledge that he missed several points of law and analysis.

89. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, At

14:00 Plaintiff pointed out that Plaintiff had explained these legal concepts, and The

professor explained, " there you got it... There it is but "you got it buried" saying that the

answer was buried in a bunch of stuff that has nothing to do with the question, The professor

has read the answer out loud, and concluded otherwise  but refuses to acknowledge that he

missed several points of law and analysis.

90. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The

professor then asserted that the course of performance has nothing to do with these facts,

because there aren't any facts that deal with these issues, whereas Plaintiff applied course of

performance due to it being a services contract, which was what the professor suggested the

answer was at 8:12, which was asserted by the Plaintiff at the beginning of the examination

and rejected by the appellee. The professor has completely changed his position on this issue.

91. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, 14:12

The professor explained that Plaintiff got back to the tender rule and that Plaintiff got

whatever points he gave Plaintiff for that specific answer, which was 5 points out of 15

92. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings,

Plaintiff gave an explanation as Common Law and course of performance and as perfect

tender

93. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The

professor stated that Plaintiff got there but said that Plaintiff got by the PTR saying that

Plaintiff never got to the issue of damages, whereas damages was discussed on page 10, page

11-12. Again, another time the Defendant Refuses to acknowledge that Defendant Refuses to

acknowledge the thorough analysis applied by Plaintiff, but instead blamed the Plaintiff for

how the exam was graded.

94. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The

professor gave the definition of Anticipatory Repudiation (AR)

95. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The

professor further explained the definition of AR

96. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explained that if Plaintiff was right about that a shorter answer would have gotten as many points as the professor could award, whereas in appellee-professor's response to the Michigan Department of Civil Right's questions interview the Defendant Stated in paragraph 3, that Plaintiff was never told he was too wordy, and that Plaintiff has not missed points because of the Plaintiff being too wordy.

97. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explained that Defendant Got straight to the Anticipatory Repudiation explaining that there has been an AR

98. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explained what he said a {      }       but called the answer a logical flip flip-flop.

99. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor reads Plaintiffs answer " reasonable assurances must be evidenced in a writing, then went on to assert that "that;'s not here, and further stated that Plaintiff got the issue, then said that the body of law is common law, or UCC if it is UCC it has to be in writing, Then the professor said that if its common law that it should be in writing, but that it is not required, then asserted the answer was not correct.

100. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor then asserted that the law is "right-ish" and that the Plaintiff needed to use the vocabulary we need.

101. The professor then asserted that he was not sure that he saw the answer that the Plaintiff listed in the blue book { when the professor graded the test} the professor went on to explain that the reason he missed the answers was because Plaintiff had not used the proper vocabulary.

102. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, Plaintiff's answers and legal analysis explain in detail how the Plaintiff came to the specific legal conclusions based on evaluation of the law and the fast as understood by the plaintiff on the day Plaintiff took the examination.

103. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explained to the Plaintiff that Plaintiff talked about the issues, and further explained that Plaintiffs answer was "right, or right -ish" then went on to explained that Plaintiff explained P-I-P

104. The professor when on to explain that Plaintiff had not identified P-I-P as a P-I-P but that the Plaintiff did explain in detail the concept.

105. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor reading out the elements explained .... Reasonable... and that was good, further explained that it was problematic, but a little better when Plaintiff explained that the client was reasonable in thinking that the contractor would preach.

106. Plaintiff read " and as performance is tendered.."

107. The professor then read Plaintiff's answer...

108. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explained that Plaintiff talked about time of the essence the professor went on to state that " I could have put a big zero points, not the issue" but this would not even apply as the professor has a holistic grading approach in order to help students who fall off, This fact is also admitted in the professor's interview questions. These are all the issues that should have yielded points under the holistic grading policy of the professor

109. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor explains the last thing the Plaintiff has to talk about is asking for a reasonable assurances within a reasonable time.

110. In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The appellee- Professor said the question asked for a reasonable insurances but the professor

stated that Plaintiff had not applied reasonable insurances to the facts, whereas in the bluebook this is clearly discussed.

111.    In the Conversation that the Plaintiff recorded with Defendant Christopher Hastings, The professor went on to explain that the fact suggest we have until the end of summer to get this thing done, is not started yet and we have a guy lined up to do it and we have to figure out how long it will take him to do it and we have to figure out how what a reasonable time is

112.    The Professor asserted that "that's kind of jumping into the facts and figuring out how to fix apply to the law, taking care of that reasonable time piece, and then you know most students didn't do this and then you know most students didn't do this and I cannot really be sure I made a deduction for it because I really work hard to be consistent and I go through every exam twice but I don't keep really detailed notes because I wouldn't be able to figure them out later anyway

113.    But I wanted you to talk about that later evaluation of the assurances but what I really want to students to do and most students didn't do it is recognize that with the question ask you to do is give advice to a client instead of talking to me I didn't make a deduction for that too but you "certainly... identified the issue of whether it is and AR so you did identify the relevant issue you just kind of fell alongside of it and of course you didn't tell me what was going on so I cannot really conclude and put things"

114. The professor said that he tries hard to make as much allowance for doubt as I can without having... The prospective inability to perform...

115. Plaintiff then explained that he never called it PIP but fully explained in the test what it (PIP) was without calling it that

116. Professor explain ".... well you certainly did that and as I at least 100 times in class, vocabulary is important." whereas the professor has a policy of grading holistically.

117. The professor broke away from his holistic grading policy explaining that Plaintiff has a problem with vocabulary and further explain that the objective grading standards in the student manual one of the things I am supposed to be looking at is giving us see that they are able to use the words in a way that makes sense.

118. The the professor began to explain the student policy manual where the professor has a grading policy of grading whereas the student grading policy is inconsistent with the professors holistic grading policy which allows the professor to allow points to students who as the professor terms it, falls off"

119. The professor then explained that "when you're not using the vocabulary my instructions from the school are, that's so – C work." If the professor indented to adhere strictly to school policy, the professor would not be grading holistically.

120.    Professor asserted "not like I went through that type of granular analysis when I was

doing that , I was just trying to outline the importance of the vocabulary what I am doing for

my students this time is giving them flashcards so they can cut them out and you to feel of

the vocabulary."

121.    In paragraph eight the Plaintiff explained  "this one looks to me like a matter of venue, in

week 14 you told us you were going to test us heavily on personal jurisdiction..." .."and, so,

like, I took that assertion and I ran with it and so that's where I didn't get up to here because I

had no other law to be tested on other than venue."

122.    The professor then asserted that it is not a venue question "and you didn't give me the

venue answer," I'll look at it let me see so not to overstate. The call of the question is put in

you put it here is there PJ, not is there venue and that doesn't sale downtown

123.    The professor then asserted "And I dispute your suggestion [that] I told you I wasn't

going to test you heavy on personal jurisdiction what I remember saying is I had already

texted you on personal jurisdiction on the midterm so you should expect it to be relatively

light" This is a handwritten midterm that was graded, therefore the professor does have a

handwriting sample for each student.

124.    The professor further stated that "But we got a personal address dishing question, we got

a fat pattern that tells you the long arm statute is not an issue that's flat out in the fact pattern,

the long arm statute. The Constitution allows, the issue now is there a general jurisdiction

jurisdiction is it going to work but it's a really easy question if and you know the threshold

issue in the problem with my air which I acknowledge it take responsibility for is that there

are two good answers, If you answered Ingham county is in Virginia then the answer is there

is general jurisdiction because that's where they are incorporated in that's all I need to hear

125.    If you assumed and you know as you did then the question becomes is there a specific

jurisdiction then you got a walk-through minimal contacts test

126.    THE TRANSCRIPT OF THE RECORDED CONVERSATION: Date: July 6, 2015

Time: 11:00 am

:
::
:::
::::
*Rings bell

Hastings: "Come on in Andre, it's good to see ya!"

Cooley: " Good morning, how you doing, sir?"

Hastings: "I am doing just fine, you, too?"

Cooley: "I'm so tired I don't know what to do."

Hastings: "Tired?"

Cooley: "Yes, sir."

Hastings: "From studying?"

Cooley: "Studying, and ripping and running."

Hastings: "Running, that's good, you look like a runner!"

Cooley: *inaudible

Hastings: "You look like a runner, slender built."

Cooley: *inaudible

Hastings: "I wasn't a runner or anything when I was a student... *inaudible"

Cooley: "I was trying to, uh.. I'll look at the Contracts one first."

Hastings: "Sure...  You want to go in the other room where we can kind of sit.."

Cooley: "Yes, sir."

Hastings: "..next to each other, that's not a bad idea."

Hastings: "I've gotten pretty good at reading upside down, but..." *inaudible


Cooley: "It's not the easiest task." *inaudible "...let me sit this."

Hastings:  "...I printed my model answers as well, because I wanted to read it before you got here, but I also created this document for you.."

Cooley: <Interrupts> "Yes, sir."

Hastings: "...and uh, the problem with doing uh," *inaudible "...Grid that names out *inaudible ...Where the points are."

Cooley: <interrupts> "Yes, sir."

Hastings: "...Before I start grading.. is that.. a student who falls off that grid and otherwise makes the initial mistake that doesn't  get them  ...to the right answer."

Cooley: "Yes, Sir."

Hastings: "They end up with, like almost no points and I don't think that's fair. so, I have a more... holistic... grading system."

Cooley: "Yes, sir."

Hastings: "But what I try to do here, You can have this is.. this is prepared for you is to walk you through both for Civ Pro and Contracts.."

Cooley:"Yes, sir."

Hastings "What I was looking for *inaudible what I could  about how I tried to score."

Cooley: "Yes, sir."

Hastings: "So that's kind of in the abstract and that's for you and you may reference that as we go through."

Cooley: "Yes, sir. Uh.. Was that the Contracts one?" *inaudible "this is the Contracts. Like right here..."

Hastings: "hmmm?"

Cooley: "like I was following the prob problem problem.. The IRAC format. Like whenever.. ok, like like.. I have ADHD.."

Hastings: "Mhhhhhmm."

 Cooley: "And so like."


Hastings: "Yep.."

Cooley: "I have to be on a specific format and make my.. my  information fit into that format.."

Hastings: "Mhmmm."

Cooley: "..because If i do not, I'll be chasing rabbits."

Hastings: "Yep."

Cooley: "Uh, and so like.. ok..  When you ss.. ok.. ok... You put zero points."

Hastings: "Yeah, there's no.. and I talked about this in class... There's no deduction for doing this this... Um..  This is.. this is.. what I call, ya know, what.. what.. most professors call it is outline dumping..."

Cooley: "Yes, sir."

Hastings: "You're giving me a bunch of naked law that doesn't apply to the facts at all."

Cooley: "Yes, sir, What i'm.. um.. Yes, sir."

Hastings: "Um so, so, you know, it's not bad If it's the way you get started, there's no harm in it, all you're losing is time."

Cooley: "Yes, sir."

Hastings: "Um, what I want to see application of law to the facts... and can I go ahead?"

Cooley: "Yes, sir."

Hastings: "You did.. You did what most students did for this question, uh, you did fine, you got 11 points, I gave eleven points to students who.."

Cooley: "Yes, sir."

Hastings: "Sustained an argument that the fact pattern was either like the cow case or the rock case."

Cooley: "Yes, sir."


Hastings: "And the points you missed were missed by everybody except two or three people in the class, which was to say, to recognize hey, you know this case is a lot like both and it's really a really hard case."

Cooley: "Yes, sir."

Hastings: "Um, so, this is a good answer, I mean, this answer is right up there with students who got an A."

Cooley: "Yes sir."

Hastings: "Uh, the only thing.... only thing... that is a little bit problematic is that it took you a lot of time to write it, because you started out with giving me a bunch of law..."

Cooley: "..and theory."  *inaudible

Hastings: "And Theory that doesn't apply to the facts, um, ya know.. It's about issue spotting.."

Cooley: "Yes sir."

Hastings: "So what you want to focus on is um.. Which parts of this law. And you do that before you start writing which is what I suggest before you start writing, which parts of the law are really at issue here... and Um what this.. this fact pattern is doing is trying to be a teeter totter..ya know.. It's balancing this... This issue of ok, We've got a case of mutual mistake which is the

issue here, so we don't need to talk about any of the other kinds of mistake- unilateral mistake, um, a.... Failure to have a meeting of the minds, misunderstanding, those are.. those are.. ya know... they don't apply.."

Cooley: "Yes, sir."

Hastings: "And you can tell me they don't apply by not talking about them at all..."

Cooley: "Yes, sir."

Hastings: "And the issue is well, you know, is this one of those things where there is.. What I was really hoping that most students would do is.. to say Gee.. This Farbrije egg.. Ya know.. "

Cooley: " Is worth more what" *inaudible

Hastings: " It is a dispute as to value, to that extent it's like the rock, but everybody assumed that it was a fossil, "

Cooley: " Yes sir, "
Hastings: " And it's not a fossil, see, that's what I really wanted folks to get. So your answer does what most did, "

Cooley: " Yes sir. "

Hastings: " And I got no problems with it, I mean, that's why there's....you used the key words, Conscious ignorance.."

Cooley: " Yes, sir."

Hastings: " I tried to give you some kind of sign.. I wish we had... Ah... ah, Colored photocopies, for you, so you could see, I try to use a different color pen."

Cooley: " Yes, sir."

Hastings: "Uh, here you had your finger right on it, uh, it's just you're talking about the value, and the egg and thh. The value is not the only... The other surprise is not just the value of the egg, it's that it's not a fossil at all, and that's, ya know, if you had talked about that, and then gotten... ya know.. said that's similar to the cow case, you would have gotten fifteen points."

Cooley: " Yes, sir."

Hastings: " So, that was an application of fact to law issue, uh, you saw my model answer, uh... which is pretty long, Which it was pretty long, I am surprised at how long it was.."

Cooley: " Yes sir."

Hastings: " uh.. but quite a bit shorter than yours. , Uh, What I am doing is going right to the heart, ya know.. like... the rock case... is it like the cow case and key there.. There's how does this conscious ignorance doctrine apply, and you got there..."

Cooley: " Yes, sir."

Hastings: " but look how many... look how much you wrote before you got there... You got: 1... 2... 3... Page 4, you're there. So, if you can figure a way to clear that out and start here... You got a a lot more time.. *inaudible That said, none of that hurt you at all and this is a good answer. You got more questions for me?"

Cooley: " No, sir."

Cooley: " On this one, like... like..  for some reason, like... during the test, like... my... my brain... Wanted it to be a sale of goods because it was a driveway that had not been put down yet."

Hastings: " mmmhmm."

Cooley: " And so, I ended up comparing it that way...."

Hastings: " yeah know, here's.. here's how.. it, let me look at this, I think, I think I kind of remember this, exam, It's funny how they stick in my head... See, you said it right here... "install" *laughs, um, here's what might help you, you know, this kind of even helps me being a better teacher, I've taught a lot before, so , that's really helpful. ya know, what you ought to think about when you're trying to make a distinction between a sale of goods and services is, can I go to the store and buy that."

Cooley: " Yes, sir."

Hastings: " Or do I have to call somebody up and say, that. Clearly we're making this house, it's a service contract. But that's the threshold issue that I was looking for is the first piece, ya know. You just kind of assumed, see, you kind of did the opposite from what you did over here."

Cooley: " Yes, sir."

Hastings: " Instead of starting way before the beginning, ya started half way in the middle, assuming that it's a UCC case, without applying the test, to see whether it is or not, and I can do more if you do that, ya know, if you tell me you made the conclusion that it is a UCC case, if I can see you doing that, even if you're wrong, that's good because now I know that you've applied the law and I can give you more points for applying the UCC test, but you lost some points for starting out in the wrong place. Uh, Then you lost some points, uh, because you really didn't.. Uh... Let me read this because I really don't want to get anything off or... Here, you're on..."

Cooley: " On this version of it, I didn't actually get the comments section, I didn't see the comment section until much much later..."

Hastings: " Yeah, There is no comments section... The problem is.. When you write like this.."

Cooley: " It's just where you explained, uh.. ya know..."

Hastings: " I need a place where I can write in here, the writing every other line is great, but what I do when the page is full, what I do is put it on the back. So, if the person who is copying for you doesn't copy it for you... The way you avoid that is to look at the original in the room before you get the copies, and make sure they copied the back, if you go look at the original exam, which you can still do, uh, you'll probably see a lot more copies, "

Cooley: " Yes, sir."

Hastings: " Or comments you would see, just getting in this... There is no other place for me to write.."

*inaudible.

Cooley: " Most of this up here is just rule statement".

Hastings: " Yeah"

Cooley: " I went into analysis and conclusion somewhere..." *inaudible.

Hastings: " Ok, This this kind of like.. a walk-though the course of someone who did't really spot the issue. you started out and did pretty good, you're in the wrong piece of law, but you're saying we're talking about breach or performance, and then the issue is if you're in the UCC, is the perfect tender rule. And those words don't appear here, so, ya know if you go into.. *inaudible What I am looking for.. When you're projecting the Perfect Tender Rule and going into substantial performance, and the issues are Has there been substantial performance and how to measure damages. Uh, actually that looks like..let me look at my model answer for just a second. Here's more of an explanation. You went straight to the UCC, which was wrong, but then what's worse you don't talk about or apply the perfect tender rule."

Cooley: " Yes, sir."

Hastings: " Um, which means you have kind of dropped off, we would be at the point where if I had a grid, that I applied.."

Cooley: " Uh... Can you uh.... let me look at that.. I went from top to bottom, I applied it,"

Hastings: " Well, it's Tender.. Acceptance... Revocation,... Rejection... and Cure... That's not the Perfect Tender Rule. Part.. Acceptance... the perfect tender rule is part of acceptance... that you have the right to reject!"

Cooley: " Yes sir."

Hastings: " Um.. so, so, The perfect tender rule is in the A, but just writing TARR-C doesn't do that," *laughs..

Cooley: " I actually, uh, explained what they..."

Hastings: " There you got it, there you got it, ok... there it is.... but see you've got it buried and this isn't an argument, you've got it buried in a whole bunch of stuff that doesn't have anything to do with the question, so you're kind of just walking through the whole course, saying I can't miss anything, so.. I am going to talk about everything, so, I am going to talk about what's a promise, what's a condition, it's not part of the question..."

Cooley: " Yes sir."

Hastings: " Course of performance... not part of the question.. ya know.. all this discussion has nothing to do with this facts, because there aren't any facts that deal with those issues."

Cooley: " Yes sir."

Hastings: " So when you do get back to the tender rule here, you can talk about it and I gave you whatever points I gave you for it, um, you're not applying it to the facts at all, you just got to that point where you're walking through the entire course and you got to the perfect tender rule. Um, Worse on the way there, you kind of reject your initial premise, which is that this is a UCC case, not a common law case, and you start talking about the common law. Which is actually where you go for the right answer, and then you have to talk about the substantial performance doctrine, and you talk about Specific performance, once again not applying it to the facts, so there is really, If I were using a grid like the other professors use, this would be zero points because you like dropped off it right away and you never got back on. There is no issue spotting, ah, there is just an outline of the whole course without a discussion of uh, The fancy taste, you're in conditions again, and conditions aren't it, here you got breach, by laying down a conventional driveway, and you say it's a non-material breach, which is true, there is a place, where you got some points, um.. now you're in substantial performance, not specific performance but you didn't tie it to that concept. this is kind of this stream of consciousness. um, so again, I think the key is to slow down and get rid of the extraneous stuff, ya know, then do some, spend more time doing issue spotting and figuring out uh, ya know.. what the train is to get you from here to there. and That's what I tried to do for you here is to outline, how to keep the logic train, toot toot, here comes the logic train, so, start by UCC or common law case,"

Cooley: " Yes sir."

Hastings: " Ah, if you go with the UCC, that's fine, but you have got to identify the perfect tender rule and apply it to the facts in this case, ya did, but it's kind of like you tripped over it instead of like... This is the issue in this case. You identified all of the issues of the entire course and didn't tie t back to the case, really, at all.... uh.. so you didn't get much there...and you never really got to the issue of what are the damages at all.. so, those points are all points that you missed, You got more questions about Number two?"

Cooley: " No, sir."

Hastings: " So, number three..."

Cooley: *inaudible

Hastings: " Well, It's the same thing all the same fact pattern."

Cooley: " Yes, sir."

Cooley: " Can you explain to me the difference between.."

Hastings: " Sure.. Anticipitory Repudiation is, I am not going to perform your contract, I am just not going to do it."

Cooley: " Yes sir."

Hastings: " Perspective inability to perform is, look it, I see some things here that give me reason to be concerned that you aren't going to perform my contract, so that's the first threshold issue, and that's how I described it here is that ah... We need to decide whether it's an Anticipator repudiation, or a Perspective inability to perform. If it's an AR it is a really short answer, because we can just walk away."

Cooley: " Yes, sir."

Hastings: " Ah, and if you were right about that a shorter answer would have gotten you as many points as I can give you for that because You ere saying I am relieved from honoring my end of the deal, so just go hire the other contractor. Ah.. you got straight to AR, if there has been an AR,"

Cooley: " You ask for reasonable assurances."

Hastings: " Then, No, nno, noo, noo, That's just a potentially uh. potential incapasity to perfrom, you ask for assurances. If it's AR, you don't have to do that, you just walk away. You framed, can I get damages for AR, as the issue, it's not, but then your answer to that question is wrong. You can get damages for AR, you can get all the damages that are associated with the Breach of contract, if it's AR, its a breach of the implied contract, not to AR the contract, so that's not the issue and the answer's wrong."

Cooley: " Yes, sir."

Hastings: " Uh, this is true, but, It's not the rule we knew. You knew that before you came to law school, right?"

Cooley: " Yes, sir."

Hastings: " About to breach, the non breach must ask for reasonable assurances, that's true, that's where you got points,  and ah... realize what you're doing here, walking away from your conclusion that it's an AR and talking about PIP, but it's also like this big logical flip-flop that is completely unexplained.."

Cooley: " Yes, sir."

Hastings: " So, reasonable assurances must be evidenced in writing, um, that's not true, and once again, you got the issue, is this Common law or is it UCC, if it's UCC, it has to be in writing, in common law it should be in writing, but it's not required, so, that's wrong on the law, and once again it's the problem with not doing that initial thing.am I in the UCC or am I in the common law."

Cooley: " Yes, sir."

Hastings: " Here we have substitutional performance? "

Cooley: " It's substituted performance."

Hastings: " Applying substituted performance, ok, that's right. in order to sue for.."

Cooley: " Damages."

Hastings: " Substituted, that's actually even spelled right, the dot may have thrown me off there, um, in order to sue for breach and damages, um.... this is kind of right-ish, but it does not use the vocabulary that we need, what we talked about here was the duty to mitigate damages. "

Cooley: " Yes, sir."

Hastings: " You've got to find that um, you're in there, i cannot tell you for sure that I spotted that when I read this, um, The reason I didn't is because You're not using the vocabulary.."

Cooley:-" Yes, sir. "

Hastings: " Uh, Duty to mitigate. Defences, there you go, failure to mitigate, could result in damages, uh.. a forfeiture ok.. of the non..This is all... Right or right-ish. and that's where you got your points, really... the parties entered a contract to perform... Based on Paradox's conduct

the client is reasonable in believing that his project will not be completed on time that falls.. This all fits with the P-I-P notion"

Cooley: " Yes, sir."

Hastings: " You haven't identified it as a P-I-P. Reasonable assurances is right, it a lot of ways, This is doing it, but it repeats what you said here, "

Cooley: " Yes, sir."

Hastings: " There is nothing really new there, reasonable time... that's good... The client is reasonable in believing that the contractor will breach... This is actually kind of what you said back here, but a little better, you have kind of a repeating kind of thing... it more time to think and get away from that.. ...Mitigated damages, time is off the essence, clause... We don't have that here.. so, that doesn't really.... that's thats, pulling law out of here that doesn't have facts to fit it, which is failure to issue spot. Both parties understand what is expected by when.."

Cooley: "..and as performance is tendered."

Hastings: " ..by when and as performance is tendered, I don't think.."

Cooley: *inaudible "..time of the essence.."

Hasting: " Ok. so you're on time of the essence, so that is kind of like a big, I could have put "zero points not the issue"

Cooley: " Yes, sir."

Hastings: " Um. and then the last thing I really wanted you talk about... What do we do? um, We have to ask for assurances, we do that in writing, and then the reasonable time issue, is the third piece, you kind of, you just flagged that, somewhere you said something about time here, you had that, but you didn't apply it to the facts, here the facts are we have til the end of the summer to get this thing done, it's not started yet, we have a guy lined up to do it and we have to figure out how long it's going to take him to do, we have to figure out what a reasonable time is. That's the kind of jumping into the facts and figuring out how the facts apply to the law, taking care of that reasonable time piece, and then you know, most students didn't do this, and then, ya know, most students didn't do this and I cannot really be sure that I made a deduction for it, because I work really hard to be consistent, and I go through every exam twice, but I don't keep really detailed notes, because i wouldn't be able to figure them out later anyway," *laughs

Cooley: " Yes, sir."

Hastings: " But I wanted folks to talk about um, the later evaluation of the assurances, but what I really wanted students to do, and most students didn't do it, is recognize that what the question asked you to do is give advice to a client uh, instead of talking to me, I didn't make a deduction

for that, too, but uh, it's probably a little bit unfair on number three, I say you did not identify the relevant issue, uh, you certainly... identified the issue of whether this is an AR. so, You did identify the relevant issue, you just kind of fell along side of it, um, and of course, you didn't tell me what was going on, so I cannot really conclude and put things.."

Cooley: " Yes, sir."

Hastings: " I try really hard to make as much allowance for doubt as I can, but without having... The potential inability to perform.."

Cooley: " I never called that.... I just kind of explained what it was without calling it that."

Hastings: " Well, you certainly did that, yeah, uh... As I at least 100 times in class, vocabulary is important...."

Cooley: " Yes, sir."

Hastings: " And uh.... You've got real problems with vocabulary here. now, if you look at the objective grading standards in the student manual one of the things I am supposed to look at If I am giving a student a C is that they're able to use the words in a way that makes sense..."

Cooley: "Yes, sir."

Hastings: "Um, so, when you are not using the vocabulary, my instructions from the school are, that's sub-C work."

Cooley: "yes, Sir. "

Hastings: " Not like I went to that kind of Granular analysis when I was doing that, I was just trying to outline the importance of the vocabulary, What I am doing for my students this term is giving them flash cards they can cut out, and use to fill the vocabulary. Moe questions? It's just one, oh Gosh! I've got a conference call I cannot be late for because I am leaving in twenty-give minutes."

Cooley: " Ok. We can meet on the other one later,"

Hastings: " It's up to you.  I don't have another thirty five minutes for the other one. Let's start on it and see how far we get, I just wanted to let you know that in twenty minutesI am gong to turn into a pumpkin. and go fire up my telephone, I need that five minutes to get my mind... My mind is... a good thing for a lawyer, you get into what you are dealing with and your whole focus is on that and the rest of the world just disappears and I look up like oh my god i am an hour late,"

Cooley: " This one looked to me like... a matter of venue In Week 14, You told us you weren't going to test us heavy on Personal Jurisdiction... and so, like, I took that assertion and I ran with

it and so, uh, that's where I didn't get up to here, because I had no other law to be tested on other than venue."

Hastings: " It's not a venue question, and you didn't give me a venue answer, I'll look at it, let me not overstate. The call of the question is and you put it here, is there PJ, not is there venue, and that doesn't sell down town,"

Cooley: " Yes, sir."

Hastings: " Um, I dispute your suggestion that I told you I wasn't going to test you heavily on PJ, what i remember saying is that I already tested you on PJ on the midterm so you should expect it to be relatively light."

Cooley: " Yes, sir."

Hastings: "But we got a PJ question, we got a fact pattern that tells you the long arm statute is not at issue, thats flat out in the fact pattern, the long arm statute is long as the Constitution allows, the issue now is is there general jurisdiction, is there specific jurisdiction, is there transient jurisdiction, transient jurisdiction isn't going to work, but it's a really easy question, if and you know, the threshold issue, and the problem with my error which I acknowledge  and take responsibility for is that there are two good answers. If you assumed that Ingham County is in Virginia, then the answer is there is general jurisdiction, because that's where they are incorporated, and thats all i needed to hear, "

Cooley: "Yes, sir."

Hastings: "If you assumed and you know, as you did, then the question becomes is there specific jurisdiction, then you gotta walk through the minimum contacts test.

Cooley: "Yes sir."

Hastings:  "And you're completely in long arm statutes, uh, you do say, ok... You did say, Where did I score this.. give me five.  "Accident arises out of Michigan," yes, ok. If we were on the grid, what the grid would say is: what are the contacts?, it's that C1-2-3. contacts and then the parts of the minimum contacts test... uh. you.."

Cooley: "Yes, sir."

***End

THE AFOREMENTIONED AND THE EVIDENCE PRESENTED BY THE PLAINTIFF ARE

SUFFICIENT to show that the Defendant WESTERN MICHIGAN UNIVERSITY

COOLEY LAW SCHOOL, CHRISTOPHER HASTINGS, NELSON MILLER, PAUL

ZELENSKI, Don LeDuc, have violated the American's with Disabilities Act.

## CLAIM AGAINST DEFENDANT STATE OF MICHIGAN
### and Kent County, Michigan Board of Commissioners, Daryl J.
### Delabbio County Administrator/Controller and Donald Johnston:

Plaintiff states the following unto this honorable court:

1. Plaintiff hereby incorporates any and all of the aforementioned paragraphs 1-126 in plaintiff's claims against the defendant STATE OF MICHIGAN, AND GOVERNOR RICKY SNYDER who is sued in his official capacity, AND Dr. Agustin V. Arbulu, Executive Director of the Michigan Department of Civil Rights (MDCR),
2. Pursuant to Article V, Section 1 of the Constitution of Michigan of 1963, the executive power of the State is vested in the Governor.
3. Pursuant to Article V, Section 8 of the Constitution of Michigan of 1963, the Governor is responsible for ensuring that all executive departments and agencies within the State, including The Department of Civil Rights, faithfully execute and comply with applicable federal and state law.
4. Governor Snyder maintains his principal office at the Office of the Governor, 111 S. Capitol Avenue, George W. Romney Building, Lansing, Michigan 48933.
5. Dr. Agustin V. Arbulu Executive Director of the Michigan Department of Civil Rights (MDCR), MDCR is an administrative agency with investigative and enforcement authority. The Enforcement Process is defined as all of the tasks performed when a customer interacts with MDCR about a civil rights-related need or concern, including investigation and resolution of complaints of discrimination under MI Const. 1963, Art. I, § 2, MI Const. 1963, Art. V, § 29, Elliott Larsen Civil Rights Act, Persons With Disabilities Civil Rights Law, Civil Rights Department/Commission Administrative Rules and 28 CFR parts 35 (title II) and 36 (title III).
6. The County Administrator/Controller is appointed by the Board of Commissioners to implement Board policies, to oversee the daily activities of the County, to serve as the Chief Administrative and

Financial Officer, and to supervise functions that report to the Board of Commissioners.

7. The chief legislative and policy-making body of Kent County Government is the 19-member Board of Commissioners. Commissioners are elected to 2-year terms from districts that are roughly equal in population. A chair and vice-chair are elected at the first meeting of each new year by the Commissioners. The chair appoints each Commissioner to one of two standing committees: the Finance and Physical Resources Committee or the Legislative and Human Resources Committee.

## JURISDICTION

This action is brought pursuant to 42 U.S.C. § 1983 to redress violations of the United States Constitution and federal statutes. This court has jurisdiction pursuant to 22 U.S.C. §§ 1331 and 1343(a)(3)(4).

### APPLICABLE LAW

28 CFR Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services:

Title II of the Americans with Disabilities Act (ADA), relating to nondiscrimination on the basis of disability in State and local government services.

The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

Title II extends the prohibition on discrimination established by section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, to all activities of State and local governments regardless of whether these entities receive Federal financial assistance.

## FACTS:

1. Plaintiff filed a complaint of discrimination with the MDCR on or about August of 2015.

2. The MDCR received a copy of the recording where the professor admitted to the plaintiff the professor made errors on appellants exam

3. the MDCR refused to conduct an impartial investigation.

4. Alexandra Baron called Plaintiff and told the plaintiff that the people at the school were nice people and that she didn't believe that discrimination happened against the plaintiff.

5. The MDCR dismissed the complaint against Western Michigan University Cooley Law school,

6. The MDCR refused to issue a charge against Western Michigan University Cooley Law school,

7. Plaintiff filed a request for reconsideration and that request was denied by the MDCR

8. Plaintiff filed an appeal in the Kent County Circuit Court and that appeal was dismissed

9. The appellant filed application for leave to appeal in the Kent County Circuit Court and that request was denied.

10.     at a July 21st session of Kent County Court the The Honorable Chief Judge Donald Johnston dismissed appellant's appeal of right without prejudice on Motion to Dismiss by the Defendant School.

11. The application filed in the Circuit Court requesting leave to appeal was timely filed within six months of June 21, 2016 which is the date the decision was issued by the MDCR when it refused to re-examine appellant's claim of discrimination based on disability and disparagement.

12. The reason for appellant's untimely filing appeal is appellant failed to perfect appeal of right;

13. And failed get the record sent in a timely manner to the court;

14. There was great confusion within the MDCR as to where the request for records was supposed to be delivered to.

15. The Kent County Circuit Court dismissed appellant's appeal of right;

16. Chief Judge Johnston was required to notify appellant that appellant failed to perfect appeal within 14 days of the filing date, whereas the court did not;

17. The Court was further required per MCR to allow 14 days for the appellant to perfect the appeal of right before the court issued its order or dismissal, whereas this court did not.

18. The Court advised appellant at the hearing held on June 21, 2016 that appellant had the right to re-file the appeal;

19. Appellant refiled an application for leave to appeal in the Circuit Court and supporting brief on September 20, 2016.

20.      The Court mailed appellant a letter and order dated September 29, 2016 advising the appellant that appellant's application for leave to appeal is DENIED;

21.      This Court further indicated in the letter, "because this Court is not persuaded that the questions presented should be reviewed at this time."

22.      Appellant asserted that this Court committed substantial error in dismissing appellant's claim against WMU-Cooley Law School, and is depriving the appellant access to the Court to be heard. The original action filed in the Court was pursuant MCR 7.203 (A) where appellant filed as an aggrieved party appealing the final judgement or decision of the Michigan Department of Civil Rights; Rule 37.18 of the Michigan Civil Rights Commission Rules providing an appeal of right within 30 days in the Circuit Court in the State of Michigan having jurisdiction within 30 days of June 21, 2016; MCR 7.113 (A) (1) (2): The court rule says that **if the appellant fails to pursue the appeal in conformity with the court rules,** the circuit will notify the parties that the appeal shall be dismissed *unless* the deficiency is remedied within 14 days after service of the notice. Application of the Court Rule to the facts show that the appellant never receive notice, in any form from the Court that the original action would be dismissed when the court had knowledge that the record had not been received.

23.      The court was aware that the record had not been received in 14 days and failed to notify the appellant that the appeal had not been perfected and further that the court had not received the record. Further, in evaluation of Michigan Court Rule MCR 7.113 (A) "Within 14 days after the date of the dismissal order, the appellant may move for reinstatement by showing mistake, inadvertence or excusable mistake." Therefore, this Court's dismissal of the appellant's claims constitute error where the Court failed to notice the appellant that the court had not received the official record, which would have triggered the 14 day period giving the appellant the opportunity to perfect. Further, to satisfy the rule the conduct is tantamount neglect because the court had a duty to give notice to the appellant and give 14 days for the appellant to perfect the appeal of right before the court took action in dismissing the appellant's claim without prejudice.

24.      Plaintiff brought a motion pursuant MCR 2.612 which permits a court to set aside a previous order that was issued on error. Sub-rule 2 expressly states that appellant can, on motion, for the specific grounds outlined in sub rules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken have the erroneous order vacated. Here, the court's order of dismissal on the appeal of right was entered in October 2016, which is within the 1 year limitations period, and appellant respectfully requests this court set-aside its previous order of dismissal and reinstate appellant's appeal.

The conduct of the DEFENDANT STATE OF MICHIGAN, GOVERNOR RICK SNYDER who is sued in his official capacity, AND Dr. Agustin V. Arbulu, Executive Director of the Michigan Department of Civil Rights (MDCR) who is sued in his official capacity, Kent County, Michigan Board of Commissioners, Daryl J. Delabbio County Administrator/Controller and Donald Johnston, constitutes a violation of Title II of the Americans with Disabilities Act (ADA), relating to nondiscrimination on the basis of disability in State and local government services. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

THE AFOREMENTIONED AND THE EVIDENCE PRESENTED BY THE PLAINTIFF ARE

SUFFICIENT to show that the Defendant STATE OF MICHIGAN and Kent County,

Michigan Board of Commissioners, Daryl J. Delabbio County Administrator/Controller

and Donald Johnston

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for injunctive relief in an order requiring DEFENDANT WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL correct the examination grade to to reflect the proper grade Plaintiff would receive under the professor's holistic grading policy in consideration for the answers provided in the blue book; Judgement as a matter of law, actual damages, punitive damages AGAINST DEFENDANT STATE OF MICHIGAN, GOVERNOR RICK SNYDER who is sued in his official capacity, AND Dr. Agustin V. Arbulu, Executive Director of the Michigan Department of Civil Rights (MDCR), who is sued in his official capacity, AND Kent County, Michigan Board of Commissioners, Daryl J. Delabbio County Administrator/Controller and Donald Johnston, AND DEFENDANT WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL as determined to be reasonable per the Court's discretion, and any and all other relief this honorable court deems just, necessary and proper.

3.      The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

Amount is in excess of the stauttory requirement,

## III.     Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

STATEMENT OF ALLEGATIONS ATTACHED

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Wherefore, Plaintiff respectfully prays for injunctive relief in an order requiring DEFENDANT WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL correct the examination grade to to reflect the proper grade Plaintiff would receive under the professor's holistic grading policy in consideration for the answers provided in the blue book; Judgement as a matter of law, actual damages, punitive damages AGAINST DEFENDANT STATE OF MICHIGAN, GOVERNOR RICK SNYDER who is sued in his official capacity, AND Dr. Agustin V. Arbulu, Executive Director of the Michigan Department of Civil Rights (MDCR), who is sued in his official capacity, AND Kent County, Michigan Board of Commissioners, Daryl J. Delabbio County Administrator/Controller and Donald Johnston, AND DEFENDANT WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL as determined to be reasonable per the Court's discretion, and any and all other relief this honorable court deems just, necessary and proper.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10 | 17 | 16 , 20____.

Signature of Plaintiff _____

Printed Name of Plaintiff _____

6

**Additional Information:**

DEFENDANT 5:

NELSON MILLER,
Assistant Dean
111 Commerce Ave SW
Grand Rapids, Kent
Michigan 49503
(616) 301-6800

Defendant 6, 7 and 8:
Governor Snyder and Dr. Agustin V. Arbulu,
Executive Director of the Michigan Department of Civil Rights (MDCR), The Michigan Department of
Civil Rights
Office of the Governor
111 S. Capitol Avenue
George W. Romney Building
Lansing, Michigan 48933.

Defendant 9, 10 and 11
Kent County, Michigan Board of Commissioners, Kent County Michigan,  Daryl J. Delabbio County
Administrator/Controller
County Administration Building, and Judge Donald Johnston
300 Monroe Avenue NW
Grand Rapids MI 49503

October 17, 2016

Andre Cooley
PO BOX 2811
Grand Rapids, MI 49501
601-319-5840


Clerk's Office
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 564
Detroit, MI 48226

Re: **ANDRE COOLEY v. Western Michigan University Cooley Law School, Et al.**

Dear Clerks Office,

I have included a copy for filing and a copy for the judge in a case I wish to file. Thanks you so much.

Andre Cooley

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

Case 4:16-cv-13727
Judge: Berg, Terrence G
MJ: Stafford, Elizabeth A.
Filed: 10-19-2016 At 02:16 PM
CMP COOLEY v. WESTERN MICHIGAN UNIV
ERSITY ET AL. (SO)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ANDRE DESHAWN COOLEY

**DEFENDANTS**

WESTERN MICHIGAN UNIVERSITY COOLEY LAW SCHOOL, CHRISTOPHER HASTINGS, NELSON MILLER, PAUL ZELENSKI, Don LeDuc, STATE OF MICHIGAN, GOVERNOR RICKY SNYDER who is sued in his official

(b) County of Residence of First Listed Plaintiff   Kent
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ingham
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

James Robb
300 S. Capitol Avenue
Lansing, MI 48933

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**

☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729 (a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☒ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☒ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

446

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
10/17/16

SIGNATURE OF ATTORNEY OF RECORD
*Andre Cooley, Plaintiff*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　　Other than stated above, are there any pending or previously　　☒ Yes
　　　　　discontinued or dismissed companion cases in this or any other　☐ No
　　　　　court, including state court? (Companion cases are matters in which
　　　　　it appears substantially similar evidence will be offered or the same
　　　　　or related parties are present and the cases arise out of the same
　　　　　transaction or occurrence.)

If yes, give the following information:

Court: Kent County Circuit Court _____

Case No.: 16-08745-AA _____

Judge: Donald Johnston _____


Notes : Appeal of administrative decision of the Michigan Department of Civil Rights

# New Lawsuit Check List

**Instructions:** Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.

[X] Two (2) completed **Civil Cover Sheets.**

[X] Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.

___11___ + 2 = ___13___ **Complaints.** *only 2 complaints provided*
# of Defendants        Total

Received by Clerk: _____ Addresses are complete: _____

Case: 4:16-cv-13727
Judge: Berg, Terrence G.
MJ: Stafford, Elizabeth A.
Filed: 10-19-2016 At 02:16 PM
CMP COOLEY v. WESTERN MICHIGAN UNIVERSITY ET AL. (SO)

[ ] If any of your defendants are **government agencies:**
Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General.

| If Paying The Filing Fee | If Asking That The Filing Fee Be Waived |
|---|---|
| [ ] Current new civil action filing fee is attached.<br><br>Fees may be paid by check or money order made out to:<br><br>**Clerk, U.S. District Court**<br><br>Received by Clerk: _____ Receipt #: _____ | [X] Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br><br><br>Received by Clerk: _DN_ |

**Select the Method of Service you will employ to notify your defendants:**

| Service via Summons by Self | Service by U.S. Marshal<br>(Only available if fee is waived) | Service via Waiver of Summons<br>(U.S. Government cannot be a defendant) |
|---|---|---|
| [ ] Two (2) completed **summonses** for each defendant including each defendant's name and address.<br><br>*None provided*<br><br>Received by Clerk: _____ | [ ] Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint.<br><br>[ ] Two (2) completed **Request for Service by U.S. Marshal** form.<br><br>*None Provided*<br>Received by Clerk: _____ | [ ] You need not submit any forms regarding the Waiver of Summons to the Clerk.<br><br>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br><br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. *None Provided* |

**Clerk's Office Use Only**

Note any deficiencies here: *No copies of the complaint provided for number of deft's*

Rev. 4/13



