UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE DESHAWN COOLEY,

    Plaintiff,

v.

WESTERN MICHIGAN
UNIVERSITY COOLEY
LAW SCHOOL, *et al.*,

    Defendants.

_____/

Civil Action No.: 16-13727
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION TO GRANT
MOTIONS TO DISMISS [ECF NOS. 15, 19, 20],
AND TO DENY PLAINTIFF'S MOTION
TO AMEND COMPLAINT [ECF NO. 23]**

## I. INTRODUCTION

Plaintiff Andre Cooley, a student at Defendant Western Michigan University Cooley Law School (WMU-Cooley), received a disappointing grade on a contracts examination in 2015. He appealed this grade to school officials, then to the Michigan Department of Civil Rights (MDCR), then to Kent County Circuit Court. Having exhausted those avenues, he files suit here against WMU-Cooley and its officials; the MDCR, its officials and the governor of Michigan; and the presiding Kent County judge and

other county officials.[1] [ECF No. 4]. The defendants have filed three motions to dismiss. [ECF Nos. 15, 19, 20]. Cooley has responded, and filed a motion to file a second amended complaint. [ECF No. 22-26, 28-29]. The Court recommends that the motions to dismiss be **GRANTED** and that Cooley's motion to file a second amended complaint be **DENIED**.

**II.   BACKGROUND**

Cooley filed an amended complaint of right, which is the operative complaint.[2] [ECF No. 4]. In this complaint, he indicates that he is a student at WMU-Cooley, pursuing a juris doctor degree. [*Id.*, PageID 72]. Cooley states that he has attention deficit hyperactivity disorder (ADHD) and is thus a protected person under the Americans with Disabilities Act (ADA) and Michigan Persons with Disability Civil Rights Act (PWDCRA). [*Id.*, PageID 72, 95]. He says that "Defendant Christopher Hastings failed to grade or caused a failure in graded of the Section 213, Contracts[3] II Exam,

---

[1] The Honorable Terrence G. Berg referred all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b)(1)A) and (b)(1)(B). [ECF No. 8].
[2] Cooley filed a second amended complaint, [ECF No. 24], but he did so without leave of court, as required by Federal Rule of Civil Procedure 15(a)(2). Therefore, the amended complaint, [ECF No. 4], is the operative complaint. And for reasons set forth below, the Court recommends that Cooley's motion to file the second amended complaint be denied.
[3] Cooley's complaint also sometimes refers to a civil procedure grade, but his complaint is focused on the contracts grade.

Hilary Term 2015 correctly and award proper points to Plaintiff." [*Id.*, PageID 72]. The specific grade he alleges he receives is identified in Cooley's response to WMU-Cooley's motion to dismiss; he says that he received a "D." [ECF No. 28, PageID 389]. WMU-Cooley describes this as a passing grade in its motion, contrary to Cooley's description of having failed the examination. [ECF No. 19, PageID 210].

Cooley does not allege that WCU-Cooley or Professor Hastings failed to provide him with requested ADA accommodations. To the contrary, he states that WMU-Cooley had a policy of providing reasonable accommodations in conformity with state and federal law, that accommodated students placed their examinations in yellow-toned folder, and that he placed contracts examination in such a folder. [ECF No. 4*,* PageID 73]. Cooley also acknowledges that WMU-Cooley has a policy for appealing grades and that he filed such an appeal. [*Id.*]. During the appeal process, Cooley met with and surreptitiously recorded his discussion with Professor Hastings. [*Id.*, PageID 75]. The majority of Cooley's complaint describes the unfairness he perceives with respect to Professor Hastings' grading methods and decision on his contracts examination. For example, he alleged that Professor Hastings did not use a testing rubric, [*id.*, PageID 75], called Cooley's examination "too wordy," [*id.*, PageID 80], and made

3

mistakes in awarding points on Cooley's examination, [*id.*, PageID 81]. Cooley's dissection of Professor Hastings' alleged errors spans several pages. [*Id.*, PageID 80-93].

Cooley then, within his complaint, provides a transcript of the surreptitious recording of the seemingly friendly conversation he had with Professor Hastings. According to the transcript, the professor explained to Cooley that he received zero points on a part of the examination because it included an "outline dump," *i.e.*, Cooley had written "a bunch of naked law that doesn't apply to the facts at all." [ECF No. 4, PageID 95]. Professor Hastings told Cooley that he gave a good answer on another part of the exam and "the points you missed were missed by everybody except two or three people in the class . . . ." [*Id.*, PageID 96]. He also told Cooley that it was "a little bit problematic" that he took substantial time writing about law that did not apply to the facts; "It's about issue spotting." [*Id.*]. Professor Hastings talked with Cooley about a specific question, how he wanted students to answer the question, and what Cooley could have done to receive more points. [*Id.,* PageID 97].

When discussing another answer, Professor Hastings explained that Cooley was mistaken by beginning with a UCC analysis rather than common law, and then not applying an applicable rule. [*Id.*, PageID 98-

4

101]. Cooley pointed out that he did address that rule, but Professor Hastings explained, "[B]ut see you've got it buried and this isn't an argument, you've got it buried in a whole bunch of stuff that doesn't have anything to do with the question, so you're kind of just walking through the whole course, saying I can't miss anything . . . ." [*Id.*, PageID 100]. Professor Hastings and Cooley continued to talk about the specific issues with the exam, and at one point Cooley said that he explained the legal principle of "potential inability to perform" without calling it that. [*Id.*, PageID 104]. Professor Hastings replied that he had emphasized in class that vocabulary was important and that the objective grading standards in the student manual required consideration of vocabulary. [*Id.*]. He said that Cooley had "real problems with vocabulary" in that answer, and the school manual instructed him (Professor Hastings) to find the work to be "sub-C." [*Id.*]. Wrapping up their discussion, Professor Hastings acknowledged that one of his question could have been interpreted two ways and then described the two ways in which it could have been answered. [*Id.*, PageID 105].

At no time during the transcript of the recording did Cooley complain about Professor Hastings or WMC-Cooley's accommodation of his ADHD.

The entire discussion pertained to Professor Hastings reasoning for assigning particular points to Cooley's answers.

After his discussion with Professor Hastings, Cooley met with Dean Nelson Miller and told him that Hastings had admitted to being unfair in his grading of Cooley's examination. [ECF No. 4, PageID 75]. (The Court disagrees with Cooley's characterization that Professor Hastings admitted to grading him unfairly.) In his discussion with Dean Miller, Cooley described his complaint as a disability rights issue. [*Id.*]. Dean Miller sent Cooley's complaint materials to Associate Dean of Enrollment and Student Services Paul Zelenski to help Cooley navigate the process for complaining about the alleged violation of his disability rights. [*Id.*, PageID 76].

Dean Zelenski told Cooley that he should amend his complaint to explain the disability issue, which Cooley interpreted as "Dean Zelenski's way of trying to keep Plaintiff busy with the school work load." [*Id.*, PageID 76-77]. Cooley nonetheless amended his complaint, but Dean Zelenski responded by saying that he saw "no relation between the grading of the two exams and a document disability." [*Id.*, PageID 77]. He told Cooley that his only recourse was a grade appeal, which had already been exhausted. [*Id.*, PageID 77-78]. Dean Zelenski was out of town when Cooley asked him to reconsider, so Cooley forwarded his complaint to

6

Dean of Students Amy Timmer, but Dean Timmer said that the matter was outside of her area of responsibility. [*Id.*, PageID 78-79].

Cooley concludes this section of his complaint by stating that WMU-Cooley, Professor Hastings, Dean Miller, Dean Zelenksi and Don LeDuc, the President and Dean of WMU-Cooley, violated his ADA rights. [*Id.*, PageID 106]. Then, in a separate complaint within the complaint, Cooley turns to his claims against the state and county defendants.

Cooley states that he filed a MDCR complaint regarding Professor Hastings' grading of his examination, but that the MDCR did not conduct an impartial investigation and that a MDCR representative called the people at WMU-Cooley nice people who she did not believe had discriminated against him. [ECF No. 4, PageID 109]. The MDCR dismissed the complaint and denied his request for reconsideration. [*Id.*]. Cooley alleges that he then appealed to the Kent County Circuit Court, but the appeal was dismissed without prejudice by Judge Donald Johnston because Cooley did not perfect his appeal. [*Id.*, PageID 109-11]. Cooley then filed an application for leave to appeal to the Circuit Court, but it was denied because the court was not persuaded by the merits of the appeal.[4] [*Id.*,

---

[4] Cooley's description of the proceedings before the Kent County Circuit Court is confusing, but the factual detail is not essential to resolving the questions raised by the Kent County defendant's motion to dismiss.

7

PageID 111]. Cooley concludes this portion of his complaint by stating that the aforementioned evidence shows that the state and county defendants are responsible for his harm. [ECF No. 4, PageID 113].

Cooley's prayer for relief is that WMU-Cooley be required to correct his examination grade, and that he receive an award of actual and punitive damages from all of the defendants. [*Id.*, PageID 113].

## III. ANALYSIS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But legal conclusions need not be accepted as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Furthermore, the Court is not required to "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). But such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012).

**A.**

The MDCR moves to dismiss, arguing that it is immune from suit under the Eleventh Amendment. The Court agrees. A state, its departments and officials acting in their official capacity are immune from suit under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63 (1989). Governor Rick Snyder and MDCR executive

9

director Agustin V. Arbulu, who Cooley names as defendants in their official capacity, have not filed a motion to dismiss; it does not appear that they were ever served with the complaint. If they were not served, the claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 4(m). And even if they were properly served, the claims against them should be summarily dismissed pursuant to 28 U.S.C. § 1915(e) since Cooley is proceeding *in forma pauperis*. That section requires dismissal at any time if a claim is (1) is frivolous; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Governor Snyder and Arbulu are state officials and therefore enjoy Eleventh Amendment immunity. *Will*, 491 U.S. at 63.

Judge Johnston moves to dismiss because he enjoys judicial immunity. "State judges enjoy absolute immunity from federal damage suits for acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction." *Schultz v. City of Wyoming*, No. 1:15-CV-940, 2016 WL 7486275, at *4 (W.D. Mich. Dec. 30, 2016) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Alkire v. Irving*, 305 F.3d 456, 469 (6th Cir. 2002)). Determining whether judicial immunity applies is essentially a two-

part test, requiring that the judge's actions be taken in a judicial capacity, and that there is no clear absence of jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). Cooley's complaint alleges that Judge Johnston dismissed his complaint while acting in his judicial capacity; judicial immunity applies.

Asserting that the claims against them should be dismissed, the Kent County Board of Commissioners and County Administrator Daryl Delabbio correctly note that Cooley's complaint does describe any involvement in the alleged violations on their part. Absent such personal involvement, Cooley has no plausible claim against these defendants. *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) ("at a minimum," a government official must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" in order to be held liable). *Palmer v. Lane*, 22 F. App'x 532, 533 (6th Cir. 2001) (plaintiff did not state a 42 U.S.C. § 1983 claim against sheriff who had no personal involvement). Cooley has not pleaded facts showing a plausible claim against the Kent county defendants, requiring dismissal. *Iqbal*, 556 U.S. at 678.

This leaves the claims against the WMU-Cooley defendants.

**B.**

Cooley cites the ADA[5] and § 1983 as establishing jurisdiction for the claims against the WMU-Cooley defendants. These defendants argue that they are not subject to suit under the ADA or § 1983 because WMU-Cooley is a private entity, citing in support *Branham v. Thomas M. Cooley Law School*, 689 F.3d 558, 564 (6th Cir. 2012). WMU-Cooley acknowledges that, since that opinion, Thomas M. Cooley Law School became affiliated with Western Michigan University, which is a state institution, but WMU-Cooley alleges that it retained its financial independence. Nonetheless, WMU-Cooley did not provide any evidence regarding whether it remains a private entity; it asserts that its articles of incorporation are a matter of public record, but it does not direct the Court to the location of that public record. [ECF No. 19, PageID 218, n. 3]. Moreover, post-graduate private schools are considered "public accommodations" to which ADA protections apply. 42 U.S.C. § 12181(7)(j); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 436 n.4 (6th Cir. 1998). Given that and given the lack of sufficient evidence regarding the effect of the merger, the decision

---

[5] Cooley also relies upon the Michigan PWDCRA, but that act essentially tracks the ADA, so dismissal of the ADA would also dispense with the PWDCRA claims. *Curry v. Cyprian Ctr.*, 17 F. App'x 339, 341 (6th Cir. 2001).

12

regarding the WMU-Cooley defendants' motion to dismiss should rest on the plausibility of Cooley's ADA claim.

Cooley has not set forth a plausible ADA claim. 42 U.S.C. § 12182(A)(1) prohibits covered entities from denying a disabled person "the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." Plaintiffs suing universities under the ADA usually complain that they were dismissed from a university program or denied reasonable accommodations. *See, e.g., Kaltenberger*, 162 F.3d at 435-36; *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015); *Brown v. Univ. of Cincinnati*, No. C-1-04-164, 2005 WL 1324885, at *9 (S.D. Ohio June 3, 2005). Here, Cooley does not allege that he was dismissed from WMU-Cooley or that he was not provided reasonable accommodations. To the contrary, he alleges that he remained a student at WMU-Cooley and that he submitted his contracts exam in the manner allowed for accommodated students. [ECF No. 4, PageID 72-73]. And as noted by Dean Zelenski, Cooley has not made any factual connection between his ADHD and the grade he received from Professor Hastings.

Moreover, Cooley's complaint that he received an unfair grade on an examination is not actionable under the ADA. That act does "not require an

educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Kaltenberger*, 162 F.3d at 436 (citations and internal quotation marks omitted). Courts must show great respect to faculty members' professional judgment and afford them "'the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Id.* (citations and internal quotation marks omitted).

This Court's search for an ADA opinion involving a claim of an unsatisfactory grade on an examination (as opposed to dismissal from an education program) rendered no results. But a substantive due process case, *Smith v. Odessa Junior Coll. Dist. Individually*, No. MO-11-CV-095, 2014 WL 12558000, at *4–5 (W.D. Tex. Jan. 14, 2014), is analogous and its opinion is instructive. The plaintiff's claim revolved around a single grade in an English course that deemed him ineligible to participate in football at his university. The court emphasized that federal courts "strongly disfavor claims that require judges to second-guess judgments about the academic quality of a student's work." *Id.* at *4. The *Smith* court relied in part on *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985), which instructed:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great

> respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Id.* Citing the "concern for lack of standards" as well as the "reluctance to trench on the prerogatives of state and local educational institutions and our responsibility to safeguard their academic freedom," the *Ewing* court dismissed the plaintiff's claim that his due process rights were violated when he was excluded from the University of Michigan after failing an important written examination. *Id.* at 225.

When, as here, Cooley was not excluded from the law school and his claim pertains to a disappointing grade on a single examination, dismissal of his complaint is all the more warranted. As is apparent from the transcript included in Cooley's complaint, Professor Hastings relied upon his professional judgment when grading Cooley's examination. The Court lacks the standards to second-guess and the authority to override Professor Hastings' academic decision. Cooley's complaint against the WMU-Cooley defendants is without merit.

## C.

The Supreme Court's ruling that courts may not override an academic decision absent a showing that those responsible did not actually exercise

15

professional judgment deems Cooley's proposed second amended complaint futile. Because Cooley sought to file a second amended complaint well after the time period allowed for an amendment as a matter of course, he must secure either the defendants' consent or leave of court. Federal Rule of Civil Procedure 15(a). Towards that end, Cooley filed a motion to file his second amended complaint. [ECF No. 23]. Leave to amend should be freely given when justice so requires. Rule 15(a)(2). But the Court should deny leave to amend a complaint "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Cooley's proposed amended complaint adds claims that his due process and equal protection rights were violated. [ECF No. 24, PageID 288-295, 301, 303, 332]. In *Ewing*, the Supreme Court dismissed the plaintiff's due process claim, ruling that a court may not override a faculty member's professional judgment absent evidence that he or she was acting outside of accepted academic norms and thus did not actually exercise

16

professional judgment. *Ewing*, 474 U.S. at 225. As noted above, Professor Hastings relied upon his professional judgment when grading Cooley's contracts examination, and this Court cannot override that judgment.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citations and internal quotation marks omitted). Cooley's proposed second amended complaint does not make the necessary showing. He has not alleged that he was treated disparately as compared to similarly situated students, except that he was given the benefit of accommodations. [ECF No. 24, PageID 291]. The proposed second amendment complaint does not claim that Professor Hastings or anyone else at WMU-Cooley targeted disabled students; Cooley instead admits that WMU-Cooley has a policy "to provide reasonable accommodations in conformity with state and federal law" for qualified disabled law students. [*Id.*, PageID 283].

17

Most importantly, Cooley cannot demonstrate that he had a fundamental right to "fair" treatment on a law school examination. *See Blau v. Fort Thomas Pub. Sch. Dist.,* 401 F.3d 381, 395 (6th Cir. 2005) (collecting cases indicating that there is no fundamental right to control how a school teaches); *McAlpin v. Burnett*, 185 F. Supp. 2d 730, 734 (W.D. Ky. 2001) ("It is equally plain that Dean has no fundamental Constitutional right to equal time on a law school exam."). Indeed, Cooley does not have a fundamental right to pursue a law school education. *Naglak v. Berlin*, No. CIV.A. 87-3427, 1988 WL 30920, at *3 (E.D. Pa. Mar. 30, 1988) ("The right to pursue a medical education is not fundamental.").

Absent a showing that an action targets a suspect class or relates to a fundamental right, that action should not be overturned unless it is devoid of any legitimate, rational purpose. *Gregory v. Ashcroft*, 501 U.S. 452, 470-71 (1991). Here, Professor Hastings' exercise of professional judgment in grading Cooley's examination was not merely legitimate; it is entitled deference. *Ewing*, 474 U.S. at 225.

For these reasons, Cooley's second amended complaint is futile, so leave to file it should be denied.

## IV. CONCLUSION

The Court recommends that defendants' motions to dismiss **[ECF No. 15, 19, 20]** be **GRANTED**, that Cooley's motion to file a second amended complaint **[ECF No. 23]** to **DENIED**, and that judgment be entered in favor of all defendants.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: August 2, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2017.

                                          s/Marlena Williams
                                          MARLENA WILLIAMS
                                          Case Manager