UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRÉ DESHAWN
COOLEY,

      Plaintiff,
  v.                                  Case No. 16-13727

WESTERN MICHIGAN             Hon. Terrence G. Berg
UNIVERSITY COOLEY            Hon. Elizabeth A. Stafford
LAW SCHOOL, et al.,

      Defendants.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. 35) GRANTING DEFENDANTS' MOTIONS TO DISMISS (DKTS. 15, 19, 20), DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND (DKT. 23) AND DISMISSING CASE WITH PREJUEDICE**

      Plaintiff André Deshawn Cooley is currently enrolled as a law student at Western Michigan University (WMU) Cooley Law School. Unhappy with the grade he received in Contracts II in 2015, he met with his Professor and surreptitiously recorded their conference concerning his performance on the exam. When the Professor did not agree to alter his grade, Plaintiff appealed his grade to school officials, filed a complaint with the Michigan Department of Civil Rights, and filed a lawsuit in the Kent County Circuit Court. None of these processes gained Plaintiff the

relief that he sought. Plaintiff now brings this pro se lawsuit against all of the entities that denied him relief: WMU-Cooley and its employees[1], the State of Michigan and its employees[2], and Kent County and its employees[3] (Dkt. 4; Amend. Compl.). Plaintiff's Amended Complaint, over 50 pages long, states that he suffers from attention deficit hyperactivity disorder (ADHD), and is thus a protected person under the Americans with Disability Act (ADA) and Michigan's Persons with Disability Civil Rights Act (PWDCRA) (*Id*. Pg ID 72, 95). Plaintiff alleges that Defendants discriminated against him due to his disability. Plaintiff's Amended Complaint also references 42 U.S.C. § 1983, but only in a perfunctory manner. The majority of Plaintiff's Amended Complaint consists of a recitation of background facts, specifically a discussion of portions of his Contracts II exam for which he believes deserved more points (Dkt. 4, Pg

---

[1] The Law School Defendants include WMU-Cooley, Don LeDuc (President and Dean), Nelson Miller (Associate Dean of Grand Rapids campus), Christopher Hastings (Contracts II Professor), and Paul Zelenski (Associate Dean of Enrollment and Student Services) (collectively, the "Law School Defendants").

[2] The State of Michigan Defendants include, "Ricky" Snyder (presumably Governor Rick Snyder), and Agustin Arbulu (Executive Director of the Michigan Department of Civil Rights) (collectively, the "State Defendants").

[3] The Kent County Defendants include the County Board of Commissioners, Daryl Delabbio (former Kent County Administrator), and the Honorable Donald Johnston, Chief Judge, Kent County Circuit Court. (collectively, the "Kent County Defendants").

2

IDs 7-28). Also included in the Amended Complaint is a section that appears to be a transcript of Plaintiff's conversation with his Contracts Professor (Dkt. 4, Pg IDs 28-41). The portion of the Amended Complaint containing Plaintiff's legal "claims" spans the remaining seven pages (Dkt. 4, Pg IDs 42-49). Plaintiff's proposed Second Amended Complaint (Dkt. 24) mentions "due process" and "equal protection" more explicitly, but again, these purported constitutional claims each circle back to a discussion of various disability statutes.

Each group of Defendants has moved to dismiss the Amended Complaint (Dkts. 15, 19, 20). Defendants' grounds for dismissal can be summarized as follows:

- The Law School Defendants – (1) since WMU-Cooley is not a public entity (and remains a private institution) Title II of the ADA and § 1983 are inapplicable; (2) Plaintiff has not sufficiently alleged a failure to accommodate claim, rather, Plaintiff's Complaint acknowledges that he received accommodations for his disability; (3) Plaintiff failed to allege any disparate impact; (4) the ADA does not provide for liability against any of the individual Law School Defendants; (5) that evaluation of a student's performance on a law school examination is not within the province of the Court; and (6) that Plaintiff failed to properly serve Defendants LeDuc and Zelenski with the summons and complaint (Dkt. 19).

- The State Defendants – Plaintiff's claims against the State of Michigan, and any of its departments, are barred by Eleventh Amendment Immunity (Dkt. 15).

3

- The Kent County Defendants – (1) Plaintiff's claims against Chief Judge Johnston are barred by judicial immunity; and (2) Plaintiff's Complaint fails to allege any wrongdoing, or personal involvement, on behalf of the remaining Kent County Defendants (Dkt. 20).

Plaintiff filed responses to each of Defendants' motions (Dkts. 22, 28, 29). Plaintiff also filed a motion for leave to amend (Dkt. 23), and a proposed second amended complaint (Dkt. 24), in response to Defendants' motions to dismiss.

The motions were referred to Magistrate Judge Elizabeth A. Stafford, who on August 2, 2017 issued a report and recommendation (Dkt. 35) recommending that all three of Defendants' motions be granted, and that Plaintiff's motion for leave to amend be denied. In summary, the report and recommendation urges: (1) that the Court to dismiss Plaintiff's case against the Law School Defendants, because exam-grading falls within the discretion of academic professionals and is not properly the subject of an ADA or § 1983 claim; (2) that the State Defendants are entitled to Eleventh Amendment immunity; (3) that Judge Johnston is entitled to judicial immunity; and (4) that Plaintiff has not stated a valid claim against the remaining Kent County Defendants, as he fails to allege sufficient involvement of these officials.

The Court has reviewed Magistrate Judge Stafford's report and recommendation. The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendations. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections (Dkt. 35); the Law School Defendants filed a timely response (Dkt. 37) to Plaintiff's objections. The State and Kent County Defendants did not file responses to Plaintiff's objections. The district court will make a "*de novo* determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1)

Plaintiff's objections are a 45-page amalgamation of legal citations that generally rehash the claims in the Amended Complaint and reassert the arguments in his responses to the motions to dismiss, without focusing specifically on any defects in the reasoning or the authorities relied on by the Magistrate Judge. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, Fed. App'x. 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Although Plaintiff fails to articulate any coherent basis for this Court to reject the report and recommendation, the Court has endeavored

5

to liberally construe and try to understand Plaintiff's objections. Plaintiff's first objection is to:

> [T]he Court's assertion and fact-to law application that "to state a claim for equal protection a plaintiff must adequately plead that the government treated the plaintiff desperately [sic] as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspected class, or has no rational basis."

Plaintiff's second objection is to:

> [T]he Court's assertion and fact-to law application where this Court has noted that courts are not in the business of second-guessing a professors [sic] professional judgment; however, the professor even second guesses his own professional judgment, because during the conversation that was recorded by the Plaintiff unbeknownst to the professor, the professor even acknowledges himself that the Plaintiff did make the necessary points of law to be awarded points, but was not.

Plaintiff's third objection is to:

> [T]he Court's assertion and fact-to law application where this court further asserts that the Supreme Court's ruling that the courts may not override an academic decision absent a showing that those responsible did not actually exercise professional judgment is significant because this professor made a different judgment when he was in the meeting with this plaintiff and was unaware he was being recorded. This defendant acknowledged errors in the examination and dismissing this plaintiffs [sic] lawsuit not only invades the province of the jury but I second guesses the professors second-guess. The facts and issues are something that should be decided by the jury. This professor provided several false statements two [sic] investigators, but why would the professor have a need to lie when the truth would have sufficed.

The Amended Complaint raises claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), and Michigan's Persons with Disabilities Civil Rights Act. "[T]he ADA is designed 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tennessee v. Lane*, 541 U.S. 509, 516, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (quoting 42 U.S.C. §§ 12101(b)(1), (b)(4)). "It forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Id.* at 516–17, 124 S.Ct. 1978. Title V, in turn, prohibits retaliation, interference, coercion, or intimidation with respect to individuals invoking the protection of Titles I through III. *See* 42 U.S.C. § 12203. Plaintiff's claims in this case are brought under Title II of the ADA. Plaintiff's Complaint also relies upon Michigan's Persons with Disabilities Civil Rights Act, but that act essentially tracks the ADA, so the analysis merges, at least under the circumstances of this case. *See Curry v. Cyprian Ctr.*, 17 Fed. App'x 339, 341 (6th Cir. 2001).

The Court will consider Plaintiff's claims as they relate to each of the three groups of Defendants.

## A. The State Defendants

As noted, the report and recommendation urges dismissal of Plaintiff's claims against the State Defendants, based on Eleventh Amendment immunity. The Eleventh Amendment guarantees that nonconsenting States may not be sued by private individuals in federal court. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73 (2000)). Congress, however, "may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Kimel*, 528 U.S., at 73).

Congress has unequivocally expressed its intent to abrogate state sovereign immunity for violations of the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12202 ("A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter")). "But the Supreme Court has

held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim." *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016) (citing cases). "To guide the lower courts in assessing whether the Eleventh Amendment proscribes an ADA Title II claim, the Supreme Court has set forth a three-part test:

> [D]etermine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 534-35 (quoting *Georgia*, 546 U.S. at 159; citing *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010)).

In this case, the bulk of Plaintiff's allegations in his Amended Complaint (Dkt. 4) and in his proposed Second Amended Complaint (Dkt. 24) focuses on the actions of the Law School Defendants. Under the Supreme Court's test, the Court must first identify how the Complaint alleges that the State's conduct violated Title II of the ADA. Plaintiff's claims against the State Defendants appear limited to the State's adjudication – and ultimate dismissal – of a complaint that he filed with the Michigan Department of Civil Rights (MDCR), concerning the same alleged underlying discrimination by the Law School Defendants. Specifically, Plaintiff

9

alleges that the MDCR failed to conduct an impartial investigation, dismissed his complaint, and denied his request for reconsideration (Dkt. 4, Pg ID 109). These allegations do not allege that Plaintiff was excluded or denied benefits by any public service, program, or activity on the basis of a disability. Nor do these allegations specify any disparate treatment or discrimination against Plaintiff based on his disability. Plaintiff's allegations are thus insufficient to state either a valid ADA claim sufficient to overcome Eleventh Amendment immunity or any colorable claim of a violation of Due Process and Equal Protection rights under the 14th Amendment against the State Defendants. Thus, the Court will accept the Magistrate Judge's recommendation that the State Defendants' motion to dismiss (Dkt. 15) should be granted.

### B. The Law School Defendants

As to the Law School Defendants, the report and recommendation concludes that the Court should grant their motion to dismiss, as Plaintiff fails to allege a plausible discrimination claim against them. This recommendation is sound, and Plaintiff's objections thereto are unavailing.

As noted by the Magistrate Judge, discrimination laws do not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Further, when reviewing the substance of academic decisions, courts "should show great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). "'University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.'" *Id.* at 225 n. 11, 106 S.Ct. 507 (quoting *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n. 6, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (Powell, J., concurring)). Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement. *See McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 859 (5th Cir. 1993); *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir. 1998).

In this case, Plaintiff does not allege that he was dismissed from WMU-Cooley or that he was not provided reasonable accommodations in taking his Contracts II examination. Indeed, Plaintiff alleges that he remained enrolled as a student at WMU-Cooley, that he received testing accommodations for his ADHD, and that he submitted his Contracts II exam in the manner allowed for accommodated students (Dkt. 4, Pg IDs 72-73). Nowhere does Plaintiff allege that he requested or needed any other accommodation from the Law School. The core of Plaintiff's case is that, in his judgment, his Contracts Professor gave him a grade that was lower than what he believed he deserved. The Amended Complaint includes what purports to be a transcript of the surreptitiously-recorded conference between Plaintiff and Professor Hastings. Nothing in that transcript supports a conclusion that the grading process was discriminatory or failed to accommodate Plaintiff's disability. While Plaintiff claims that Professor Hastings failed to apply the "holistic grading approach" that he said he used, in the quoted dialogue between Plaintiff and the Professor he appeared to apply just such an approach, awarding Plaintiff points where he discussed relevant law and facts, but denying

them where his organization, argument, or legal vocabulary was inadequate (Dkt. 4, Pg ID 42-54). The Amended Complaint draws no connection between Plaintiff's disability, any alleged failure to accommodate, and the awarding of Plaintiff's grade. This does not state a valid ADA claim, and also does not allege any kind of discrimination or denial of due process that could make out a 14th Amendment violation. The Court therefore accepts the Magistrate Judge's recommendation that the Law School Defendants' motion to dismiss (Dkt. 15) should be granted.

### C. The Kent County Defendants

Finally, as to the Kent County Defendants, the report and recommendation correctly recognized that Chief Judge Johnston is entitled to judicial immunity. It further recognized that Plaintiff failed to allege sufficient facts to state a valid discrimination claim against the remaining Kent County Defendants. Plaintiff's objections do not persuade the Court to alter these recommendations. The Court therefore accepts the Magistrate Judge's recommendation that the Kent County Defendants' motion to dismiss (Dkt. 20) should be granted.

## CONCLUSION

For the reasons set forth above, the report and recommendation (Dkt. 35) is hereby **ACCEPTED** and **ADOPTED**, and Plaintiff's objections (Dkt. 36) thereto are **OVERRULED**. Defendants' motions to dismiss (Dkts. 15, 19, 20) are **GRANTED** and this case is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2017

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 29, 2017, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager